**E-FILED on** 12/18/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT MERSNICK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>USPROTECT CORPORATION, a Maryland corporation formerly known as HOLIDAY INTERNATIONAL SECURITY, INC., and DOES 1 TO 25,<br><br>Defendant. | No. C-06-03993 RMW<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING IN PART DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT<br><br>[Docket No. 17] |

Defendant USProtect Corporation ("USP") moves to dismiss plaintiff's complaint for failure to state a claim or, in the alternative, for more definite statement. Plaintiff Scott Mersnick ("Mersnick") opposes USP's motion. The court has read the moving papers and considered the argument of counsel. For the reasons set forth below, the court denies in part and grants in part defendant's motion to dismiss and grants in part defendant's motion, in the alternative, for more definite statement as follows: (1) defendant's motion to dismiss plaintiff's first, second, third, sixth, and eighth claims for relief is granted; (2) defendant's motion to dismiss plaintiff's fourth and fifth claims for relief is denied; (3) defendant's motion to dismiss plaintiff's claim under the FLSA

(seventh cause of action) is denied; (4) defendant's motion for more definite statement is granted as to plaintiff's allegations supporting his fourth and fifth claims for relief; and (5) plaintiff has twenty (20) calendar days from the date of this order to amend his complaint.[1]

## I. BACKGROUND

Mersnick is currently employed full-time as a security officer in Santa Barbara County. Compl. ¶ 2. Although not stated in the complaint, the parties do not dispute that Mersnick specifically works at Vandenberg Air Force Base ("Vandenberg"). USP provides security and investigation services primarily to government agencies. *Id.* ¶ 5. Plaintiff alleges that such security services are provided under contracts with federal agencies and others in the United States and outside the United States. *Id.* ¶ 6. Plaintiff alleges that under these contracts, USP is "obligated to reimburse employees for costs of certain training and certification, if any" including state certifications. *Id.* ¶ 8. According to the complaint, USP agreed to comply with "various applicable local, state and federal laws" under the contracts. *Id.* ¶ 9.

Plaintiff contends that USP failed to comply with its contractual obligations by, *inter alia*, not providing for proper meal periods, deducting pay for meal periods even when it expected or directed the employee to perform duties during the meal period, typically not providing rest periods, expecting or directing security officers to work "off the clock" without pay, paying less than the obligated amounts to employees for travel to and participation in training and shooting qualifications, and assuring officers that they would not need to obtain various certifications and permits only to later reverse its position. *Id.* ¶ 10.

Plaintiff purports to bring this action on behalf of himself and a putative class consisting of:

> all persons who are, or have been, employed by defendant USPROTECT CORPORATION, a Maryland Corporation formerly known as HOLIDAY INTERNATIONAL SECURITY, INC., ("USProtect") to provide services as a security officer at any site in the world.

*Id.* ¶ 1.

Plaintiff alleges that USP violated the Fair Labor Standards Act ("FLSA") and also alleges

---

[1] The court notes that no class has been certified under Fed. R. Civ. P. 23 in this action and, as set forth elsewhere in this order, the court's order applies only to plaintiff Mersnick's individual claims.

seven claims for relief under California statutory and common law.  In particular, plaintiff avers that USP violated sections of the California Labor Code and the FLSA because, *inter alia*, it failed to pay plaintiff and class members "all" wages on regular paydays and engaged in a regular practice of requiring plaintiff and other class members to work more than eight hours a day or forty hours a week without overtime pay.  Plaintiff also alleges that USP did not properly reimburse expenses incurred by its employees in obtaining various training and certifications.

## II.  ANALYSIS

### A.    Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  The court's review is limited to the face of the complaint, documents referenced in the complaint, and matters for which the court may take judicial notice.  *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991).  When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  A court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  However, the court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

### B.    Fair Labor Standards Act ("FLSA")

Defendant argues that plaintiff's claim under the FLSA is barred in whole or in part by a settlement between the Department of Labor ("DOL") and USP for claims arising under the Service Contract Act ("SCA") and the Contract Work Hours and Safety Standards Act ("CWHSSA").

Defendant contends that the settlement also covers claims under the FLSA. In opposition, plaintiff argues that (1) USP has not shown that the DOL filed a complaint or investigated USP under the FLSA, or that any employees consented to FLSA payments and (2) the court may not take judicial notice of the unproven facts raised in defendant's motion surrounding the settlement which were not pled in the complaint.

To support its motion, defendant seeks judicial notice of USP's settlement with the DOL regarding unpaid compensation. *See* Def.'s RJN ¶ 1; Heather Cheyne Decl. Supp. Mot. Dismiss, Ex. B (Form WH-56 Settlement Forms).[2] The terms and existence of the settlement are not alleged in the complaint. Defendant argues that plaintiff's present claims "arise from the identical facts and circumstances already investigated by the DOL and settled pursuant to the DOL's exclusive authority under the SCA and CWHSSA regulatory scheme." Defs.' Mot. at 16:14-20. Defendant further argues that the remedies of the SCA and CWHSSA are more favorable than those under the FLSA with respect to prevailing wage rates, certain specified fringe benefits, and enforcement authority to compel payment of overtime, and thus the settlement necessary encompasses FLSA claims.

A court may consider documents whose authenticity is not contested and on which plaintiff's complaint necessarily relies. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Such documents "must be integral to the plaintiff's complaint and dispositive in the dispute, raising the spectre that plaintiff failed to incorporate them by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal." *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co.*, 393 F. Supp. 2d 972, 979 (N.D. Cal. 2005) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if it is dispositive of plaintiff's claims)). However, the court finds that judicial notice is not appropriate

---

[2] Defendant also seeks judicial notice of a letter from defendant's counsel to the DOL purporting to describe the terms of the settlement and e-mail communication from the DOL. However, these documents are not part of the settlement agreement and the court declines to take judicial notice of them.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING IN PART DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT—C-06-03993 RMW
SPT                                  4

here because the settlement is not dispositive of plaintiff's FLSA claims. Specifically, the FLSA, the SCA, and the CWHSSA appear to be mutually supplemental rather than mutually exclusive.[3]

Although the Ninth Circuit has not addressed the issue of whether the FLSA, SCA, and CWHSSA are exclusive of each other, several other circuit courts have. The Fourth Circuit concluded as to the FLSA, SCA, and CWHSSA, that "none of the three statutes are mutually exclusive of the other, but that the provisions of all may apply so far as they are not in conflict." *Masters v. Maryland Mgmt. Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974). The court reasoned that "[a] laborer is ordinarily entitled to be paid in accordance with the statutes requiring the greatest pay, but this does not mean no other parts of the other statutes may not affect him." *Id.* Likewise, the Eleventh Circuit concluded:

> Congress intended that the FLSA overlap with other federal legislation. *Powell v. United States Cartridge Co.*, 339 U.S. 497, 513-19, 70 S. Ct. 755, 766-67, 94 L. Ed. 1017, 1037-38 (1950). The FLSA and other statutes are not mutually exclusive. *See id.* The provisions of the FLSA and the SCA may all apply as long as they do not conflict. *Masters v. Maryland Management Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974), citing *Dowd v. Blackstone Cleaners, Inc.*, 306 F. Supp. 1276 (N.D. Texas 1969). It is possible that the FLSA may allow a private right of action even though the SCA does not. *See, e.g., Berry v. Andrews*, 535 F. Supp. 1317, 1318-1319 (M.D. Ala.1982). Such a difference between the two statutes is not a conflict.

*Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 431 (11th Cir. 1994).

Defendant contends that even if the statutes are mutually supplemental, plaintiff's FLSA claim is nevertheless barred because it conflicts with the remedies provided under the SCA and CWHSSA. Here, plaintiff alleges that defendant violated 29 U.S.C. §§ 206-207 by failing to properly pay overtime at overtime rates by:

> engag[ing] in a regular practice of requiring plaintiff and members of the plaintiff class to work in excess of 40 hours per week without proper overtime pay by virtue of not paying plaintiff and class members for certain periods of time which they worked or presented themselves as being available for work.

---

[3] Defendant argues that the DOL's investigation and the resulting settlement were also made under the FLSA. However, the attached executed Form WH-56 Settlement Forms do not purport to show that the settlement payments were made under the FLSA. While the court could take judicial notice of a settlement agreement, defendant's additional argument as to the terms of the agreement are not within the reach of judicially noticeable matters. *See Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1071 n.10 (9th Cir. July 3, 2006) (taking judicial notice that a settlement was reached between defendant and the EPA, but not of supplemental arguments urged by defendant relating to the agreement).

1  Compl. ¶¶ 45, 47. The SCA requires certain contracts entered into between the United States and
2  service employees to include a provision specifying the minimum wages (for each employee class)
3  in accordance with prevailing local rates and a provision specifying the fringe benefits to be
4  provided, including vacation and holiday pay required by federal, state, or local law. *See* 41 U.S.C.
5  § 351(a)(1)-(2). The CWHSSA requires laborers who work for government contractors to be paid
6  overtime at a rate equal to time-and-a-half for hours worked in excess of 40 per work week. *See* 40
7  U.S.C. §§ 328-29. By comparison, the FLSA also requires that employees be paid a minimum wage
8  and specifies that overtime be paid at a rate of time-and-a-half for employees "engaged in
9  commerce." *See* 29 U.S.C. §§ 206-07.

10       In *Masters*, the Fourth Circuit found that the SCA and the CWHSSA did not conflict with the
11  FLSA as to the computation of basic or regular rate and overtime compensation. The court reasoned
12  that the computation of overtime necessarily relies upon the regular rate under the FLSA and that the
13  FLSA's regular rate is a similar concept to the basic rate referred to in the SCA and the CWHSSA:

> The computation of "regular rate" is, of course, the first step in computing an employee's overtime. The Service Contract Act explicitly states that "the regular or basic hourly rate of pay" will include no fringe benefits not includable in the regular rate under the Fair Labor Standards Act. 41 U.S.C. § 355. *See also* 29 CFR § 4.55, § 778.7 and § 778.214(e). Similarly, 29 CFR § 4.15(c)(1) and (2) make clear that "basic rate" as used in the Contract Work Hours and Safety Standards Act is synonymous with "regular rate" under the Fair Labor Standards Act.

18  *Masters*, 493 F.2d at 1332-33. The Fourth Circuit thus concluded that the three statutes may overlap
19  since "[a] laborer is ordinarily entitled to be paid in accordance with the statute requiring the greatest
20  pay," but that the statutes nevertheless do not conflict because "this does not mean no other parts of
21  the other statutes may not affect him." *Id.* at 1332. For example, the FLSA provides for liquidated
22  damages and attorney's fees and costs. *See* 29 U.S.C. § 216(b).

23       The language of the FLSA also supports the conclusion that an employee's private cause of
24  action may be terminated if payments accepted from the DOL were pursuant to the DOL's findings
25  under the FLSA, not under other statutes. Section 216(b) provides the right of private action and
26  specifies that such right shall terminate upon the DOL's filing of a complaint under § 217 of the

FLSA:

> The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action *under section 217 of this title* in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

29 U.S.C. § 216(b) (emphasis added). Section 216(c) of the FLSA provides that a private action for violations of §§ 206 and 207 may be terminated by an agreement by the employee to accept payment of unpaid wages owed to them through payments supervised by the DOL:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation *owing to any employee or employees under section 206 or section 207 of this title*, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c) (emphasis added); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). A private action to recover unpaid compensation under §§ 206 and 207 may also be terminated by the filing of an action by the DOL under the FLSA:

> The right provided by subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207 of this title or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b) of this section, unless such action is dismissed without prejudice on motion of the Secretary.

*Id.*

The court therefore concludes that the SCA and the CWHSSA do not necessarily preclude plaintiff from bringing an action under the FLSA. Plaintiff has adequately stated a claim under the FLSA. *See* 29 U.S.C. § 207.

**C.   Applicability of the Federal Enclave Doctrine**

The applicability of the Federal Enclave Doctrine affects what state law claims, if any, plaintiff may bring. USP argues, and Mersnick does not dispute, that Vandenberg has been a federal

enclave since 1943.[4]  *See also Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 479-80 (2000) (noting that the land on which Vandenberg is located was purchased by the United States in 1941 and that the United States accepted jurisdiction over the property in January of 1943).[5] However, the parties dispute the applicability of the Federal Enclave Doctrine to the present action between the parties.  Mersnick argues that a contract provision between the parties overrides the applicability of the Federal Enclave Doctrine.[6]  USP does not dispute the existence of the contract provision, but contends that "language in a government contract cannot waive the exclusive federal jurisdiction provided by the enclave doctrine."  Def.'s Reply at 1:28-2:1.

Congress' power to exercise exclusive federal jurisdiction in federal enclaves is enumerated in Article I, Section 8 of the United States Constitution, which provides that the Congress shall have power:

> To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;

U.S. Const. Art. I § 8, cl. 17.  Where the United States acquires land within a state's border with the consent of that state for any of the purposes in Art. I, § 8, cl. 17, the federal government's jurisdiction becomes exclusive, with certain exceptions.  *Paul v. United States*, 371 U.S. 245, 264 (1963).

---

[4]   Plaintiff purports to bring this action on behalf of himself and a putative class of "persons who are, or have been, employed by defendant USPROTECT CORPORATION . . . to provide services as a security officer at any site in the world."  Compl. ¶ 1.  Plaintiff alleges that he is a current USP employee working as a security officer at Vandenberg.  No class has been certified pursuant to Fed. R. Civ. P. 23 in this action.  This order does not address the sufficiency of the complaint other than as to plaintiff Mersnick's individual claims.

[5]   Under 40 U.S.C. § 255 the United States's exclusive jurisdiction does not arise until the federal government has accepted such jurisdiction: "Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

[6]   Specifically, plaintiff argues if given leave to amend he could add the relevant contract provision, which he submits is found in "the September 12, 2005, Performance-Based Work Statement for Phase IV Contract Security Guards for contract FA3047-04-F-0516.  Pl.'s Opp. at 2:20-3:1.

First, the state may continue to exercise jurisdiction expressly reserved by the state as a condition to its consent (and consistent with the federal use). *Id.* at 268.  Second, state laws existing at the time the United States accepts jurisdiction remain enforceable unless "abrogated" by federal law. *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99 (1940).  In *James Stewart*, the Court explained the rationale for retention of certain state laws:

> The Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred. This assures that no area however small will be left without a developed legal system for private rights.

*Id.* at 99-100 (1940).  Third, exclusive federal jurisdiction may be "qualified in accordance with agreements reached by respective governments." *Id.* at 309 U.S. at 99.  Apart from these exceptions, state regulation is barred without "specific congressional action." *Paul*, 371 U.S. at 263.

Plaintiff's argument that a contract between a private party and the federal government is sufficient to bar the application of the Federal Enclave Doctrine is unpersuasive. In *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988), the Court held that "a federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation." Morever, the rationale underlying the exceptions to exclusive federal jurisdiction over federal enclaves does not support the proposition that a contract between the federal government and a private party may alter the exclusivity of federal jurisdiction.  Indeed, such a proposition appears to be inconsistent with the underlying policies.  Contracts with private parties neither "assure[] that no area . . . will be left without a developed legal system for private rights" nor "cooperatively adjust problems flowing from our dual system of government." *See Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 528 (1938) ("The States of the Union and the National Government may make mutually satisfactory arrangements as to jurisdiction of territory within their borders and thus in a most effective way, cooperatively adjust problems flowing from our dual system of government."). In any event, plaintiff cites no case law in support of his theory that a contract provision between a private party and the government could preclude the application of the Federal Enclave Doctrine.

### D. California Labor Code Claims

Plaintiff's first, second, and third claims seek relief under Cal. Labor Code §§ 201-204 and 226.7, as well as the California Industrial Welfare Commission's Wage Order No. 4 ("Wage Order No. 4"). The parties do not dispute that § 226.7 and Wage Order No. 4 were enacted after Vandenberg was ceded to the federal government. Because the court finds that the Federal Enclave Doctrine applies, plaintiff's claims under § 226.7 and Wage Order No. 4 are barred. Cal. Labor Code §§ 201-204 were enacted in 1937. Defendant argues that these state laws conflict with the FLSA, including as amended by the Portal-to-Portal Act, and therefore cannot apply in a federal enclave.

Plaintiff makes two primary arguments that these state laws are not barred by the Federal Enclave Doctrine. First, plaintiff contends that a state law is not barred under the Federal Enclave Doctrine if it does not prevent the employer from complying with both federal and state laws. Second, plaintiff argues that where the state law offers *greater* protections than the federal law, it is not "inconsistent" with the federal law. Plaintiff relies primarily upon *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 290-91 (1987) in support of his contentions. However, the Court in *California Fed. Sav. & Loan* was evaluating whether a California statute conflicted with Title VII under the standard applicable to "those areas where Congress has not completely displaced state regulation." *Id.* at 281. Under those circumstances, the Court noted the applicable standard is whether the state law "actually conflicts with federal law" because "compliance with both federal and state regulations is a physical impossibility." *Id.* The Court made clear that the standard articulated applied to a preemption inquiry where Congress has legislated but has not evinced any intent to occupy the field or categorically preempt state law. *Id.* at 280-81; *see also* 42 U.S.C. § 2000e-7 (specific non-preemption clause for Title VII actions). Plaintiff cites no case law that suggests that the standard in the preemption inquiry where federal law does not occupy the field is applicable to whether state law applies in a federal enclave. Rather, the standard for whether state law applies is necessarily more stringent given the exclusivity of federal jurisdiction on federal enclaves.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING IN PART DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT—C-06-03993 RMW
SPT         10

In *George v. UXB International, Inc.*, 1996 WL 241624, *3 (N.D. Cal. 1996) (JW), the court concluded that daily overtime requirements under California law conflict with the FLSA which considers only the weekly total number of hours worked to compute overtime, and therefore the California law did not apply on a federal enclave. A parallel analogy is found in *United States v. Antelope*, 430 U.S. 641, 670 (1977). There, the Court rejected the proposition that state criminal law should apply on federal enclaves to the extent that the state law was "more lenient" than federal law as inconsistent with the Supremacy Clause:

> If we accepted respondents' contentions, persons charged with crimes on federal military bases or other federal enclaves could demand that their federal prosecutions be governed by state law to the extent that state law was more "lenient" than federal law. The Constitution does not authorize this kind of gamesmanship. Indeed, any such rule, even assuming its workability, is flatly inconsistent with the Supremacy Clause of the Constitution, Art. VI, cl. 2.

*Id.*

The complaint alleges that USP failed to pay former employees within 72 hours of discharge or resignation. Sections 201 and 202 generally provide that wages and related benefits be paid within 72 hours upon discharge, layoff, or resignation. *See* Cal. Labor Code §§ 201 and 202. Section 203 generally provides a penalty for an employer's willful failure to pay in accordance with sections 201 and 202, which consists of the employee's wages at the same rate for thirty additional days from the due date. *See* Cal. Labor Code § 203. Plaintiff's claims under Cal. Labor Code §§ 201-203 are barred by the Federal Enclave Doctrine because the FLSA "provides for minimum standards for both wages and overtime entitlement, and delineates administrative procedures by which covered worktime must be compensated" under federal law. 5 C.F.R. § 551.101(a). Further, as defendant argues, the FLSA does not provide for penalties for failure to pay wages within a specific period of time during employment or after termination of employment. *See* 29 U.S.C. § 201 *et seq.; see also Ochoa v. Weisenee Ranch, Inc.*, 107 Ore. App. 203, 206 (1991) (noting that the FLSA does not provide for penalties for late payment of wages). Moreover, plaintiff does not allege that he has been discharged or has resigned and, in fact, alleges that he is a current employee of USP. Accordingly, he lacks standing to bring claims under sections 201, 202, and 203.

Section 204 sets forth requirements for designating regular paydays on a semimonthly basis within certain times each month. The basis of plaintiff's § 204 claim is that (1) USP failed to compensate its California and non-California[7] employees for missed meal and rest periods; and (2) USP failed to compensate its California and non-California employees for time worked "off the clock" generally for "arriving early for a shift for weapon issuance, briefings, transport to posts, or for other reasons" and "remaining after the end of a shift for weapons turn-in, briefings, transport to posts, or for other reasons." Compl. ¶¶ 10(D), 16. Plaintiff's claims under Cal. Labor Code § 204 are also barred by the Federal Enclave Doctrine because the FLSA (and federal law interpreting the FLSA) specifically provides for when such preliminary and postliminary activities may be compensable. *See* 29 U.S.C.§ 254(a) (providing generally that such activities are not compensable); *Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956) (concluding that some preliminary and postliminary activities are compensable where those activities are "an integral and indispensable part of the principal activities").

### E. Claims under California Common Law

Plaintiff's fourth, fifth, sixth, and eighth claims seek relief under California common law theories of unjust enrichment, promissory estoppel, violation of the California Business & Professions Code § 17200 *et seq.*, and breach of contract, respectively.

#### 1. Unjust Enrichment

Defendant argues that plaintiff's unjust enrichment claim is barred by the Federal Enclave Doctrine because the underlying state law for this claim—Cal. Labor Code § 2802—is inconsistent with federal law. Plaintiff's claim is premised on allegations that USP failed to reimburse employees for expenses incurred in obtaining training and certifications and for travel expenses, which plaintiff contends would be reimbursable under § 2802.[8] Section 2802 provides in relevant part: "An

---

[7] Plaintiff purports to bring this action on behalf of a putative class consisting of former and current USP service officers worldwide. However, the complaint alleges claims under only California law and the FLSA. This order addresses only whether plaintiff has stated a claim for his individual action. No class has been certified under Fed. R. Civ. P. 23 in this action.

[8] Plaintiff alleges that reimbursement is also required based on a contract between the parties, but does not specify the particular contract to which he refers.

employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Cal. Labor Code § 2802.  Defendant's argument that there are provisions in the FLSA regarding expenses reimbursements that are inconsistent with § 2802 is unpersuasive.

First, defendant argues § 2802 is inconsistent with federal law because the FLSA only precludes reductions of compensation that cause compensation to fall below the minimum wage requirements.  However, reimbursement of expenses is not the same as deductions from wages.  Second, defendant points to *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1237 (11th Cir. 2002), where the court held that under the FLSA immigrant farm workers must be reimbursed for pre-employment expenses incurred primarily for the benefit of the employer such that wages are at least equivalent to the minimum wage.  However, *Arriaga* only applied the FLSA's requirement that wages not be reduced below the minimum wage; it does not purport to regulate what is or is not considered reimburseable employee expenses.  Defendant cites no provision of the FLSA or regulations thereunder governing reimbursement or indemnification of expenses incurred by employees in the course of employment or in discharge of their duties.  Rather, reimbursement for expenses such as "registration fees and mileage to and from in-service training . . . generally would be a matter of private agreement between the employer and employee, so long as at least the full minimum wage is paid free and clear for all hours worked." Wage-Hour Opinion Letter, Dep't of Labor (Sept. 10, 1998), *available at* 1998 DOLWH LEXIS 78; Def.'s RJN, Ex. 3.

Defendant also argues that the claim is inconsistent with federal law because unjust enrichment does not exist under federal common law.  This argument is unpersuasive because under the Federal Enclave Doctrine state law in existence at the time the land is ceded continues unless abrogated by federal law or unless otherwise inconsistent with the purposes of the federal functions.  The parties do not dispute that the common law claim of unjust enrichment predates the cession of Vandenberg.  Defendant points to no federal law that is inconsistent with or otherwise abrogates an unjust enrichment theory and, as noted above, the FLSA is not inconsistent with the underlying basis for plaintiff's unjust enrichment claim.  Therefore, the court concludes that plaintiff's unjust

enrichment claim is not barred by the Federal Enclave Doctrine.

### 2.   **Promissory Estoppel**

Plaintiff alleges that defendant promised him that he would not need to obtain various state certifications and permits in order to work for USP, that he relied upon such promises in accepting employment with USP and declining other employment offers, and that after he began employment, USP informed him that he was required to obtain various certifications and permits at his own expense to avoid termination of his employment. Defendant argues that plaintiff's promissory estoppel claim should be dismissed on two grounds. First, the certifications and permits are required by law and, therefore, any reliance on a purported statement that such certifications and licenses are not required is unreasonable. Second, under both state and federal law, employers have no duty to reimburse for such expenses. As plaintiff's argue, whether or not there is a duty to reimburse under the law is not relevant to plaintiff's claim, which alleges that defendant "promised" that such certification and permits were not needed for employment *at USP*. The issue is not whether there was a duty, but whether plaintiff has alleged a claim for promissory estoppel. Defendant's argument that plaintiff's reliance is unreasonable is an issue of fact, not an issue that this court can resolve in a motion to dismiss for failure to state a claim.

### 3.   **Section 17200** *et seq.*

Defendant argues primarily that plaintiff's claim must fail because the Federal Enclave Doctrine bars plaintiff's claims based on California wage and hour laws and, additionally, the remedies afforded under Cal. Bus. & Prof. Code § 17200 are inconsistent with those under the FLSA. Plaintiff argues that the alleged violations of the FLSA can nevertheless serve as a predicate for a violation of § 17200. "The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under State law." *Bahramipour v. Citigroup Global Markets, Inc.*, 2006 WL 449132, *2 (N.D. Cal. 2006) (citation omitted); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 167 (1999). However, where the underlying action is otherwise barred, "[a] court may not allow a plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 167. Although *Cel-Tech* discussed an absolute bar imposed by

specific legislation, the court's reasoning applies with equal force to an absolute bar under the Federal Enclave Doctrine.

Here, the predicate unlawful and unfair business practice for plaintiff's § 17200 claim is defendant's alleged violations of wage and hour laws.[9]  "[T]he Supreme Court and the Ninth Circuit have consistently found that the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000) (citations omitted).  The FLSA is designed to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* at 1150 (citations and internal quotations omitted).  As discussed above, because plaintiff's claims of violations of wage and hour laws in a federal enclave are governed by the FLSA, plaintiff's state law claims for such violations are barred by the Federal Enclave Doctrine. It follows, then, that plaintiff's § 17200 claim, predicated on the same alleged violations of wage and hour laws are also barred by the Federal Enclave Doctrine.[10]

### 4.     **Breach of Contract**

Plaintiff's eighth claim seeks relief for breach of contract by defendant.  Plaintiff alleges that plaintiff (and class members) all have contracts which provide that they are to be paid hourly for their services as security officers.  Plaintiff also contends that the contracts incorporate all existing provisions of California law, including the California Labor Code, and that defendant "has breached its contract with plaintiff and the plaintiff class by failing to pay the various sums due and owing as described above." Compl. ¶ 52.  As defendant argues, to the extent the alleged contract was made within a federal enclave, the contract is regulated by federal law. *See Pacific Coast Dairy, Inc. v. Dept. of Agriculture of California*, 318 U.S. 285, 294 (1943).  In other words, the contract does not

---

[9]     Plaintiff seeks restitution as well as injunctive relief enjoining defendant from the alleged unlawful and unfair business practice.

[10]     Defendant also argues that plaintiff cannot be entitled to restitution because California's unfair competition laws did not recognize an award of restitution until 1976 and therefore restitution is barred by the Federal Enclave Doctrine. *See* Stats. 1974, ch. 746, § 1 (amending Cal. Civil Code § 3369).  However, as this is a motion to dismiss plaintiff's claim, the court does not reach the question of what remedies may be permitted under a particular claim.

1  "incorporate all existing provisions of California law" as plaintiff alleges.  Plaintiff also alleges that
2  his contract specifically provides that he would be paid hourly for services as a security officer.
3  However, plaintiff provides no specific factual allegations that indicate that he was not paid hourly
4  for services as a security officer.  Plaintiff's general reference that defendant failed "to pay the
5  various sums due and owing as described above" is insufficient to state a breach of contract claim
6  even under the liberal pleading requirements of Rule 8.

### F. Motion for More Definite Statement

8  Defendant moves, in the alternative, for more definite statement as to certain allegations in
9  the complaint.  Defendant's request as to those claims that have been dismissed is moot.  The court
10 grants defendant's motion for more definite statement as to plaintiff's allegations supporting his
11 fourth and fifth claims for relief.  These include the allegations contained in (1) paragraph 30 of the
12 complaint alleging a duty under "contract and/or state law" to reimburse expenses incurred "in
13 obtaining various trainings and certifications" based upon "an agreed upon rate"; and (2) paragraphs
14 34 and 36 claiming that defendant promised plaintiff he would not need to obtain "various state
15 certifications and permits" and that plaintiff was later required to obtain "various certifications and
16 permits" to avoid termination of employment.  Specifically, plaintiff's amended complaint should set
17 forth the particular state law or contract pursuant to which he alleges a duty to reimburse expenses,
18 the types of expenses incurred, the agreed-upon reimbursement rates, the promise or promises made
19 regarding state certifications and permits not needed for employment with USP, and the
20 certifications and permits later required by USP at plaintiff's expense.

## III.  ORDER

For the foregoing reasons, the court denies in part and grants in part defendant's motion to dismiss and grants in part defendant's motion, in the alternative, for more definite statement as follows:

1. Defendant's motion to dismiss plaintiff's first, second, third, sixth, and eighth claims for relief is granted;
2. Defendant's motion to dismiss plaintiff's fourth and fifth claims for relief is denied;
3. Defendant's motion to dismiss plaintiff's claim under the FLSA (seventh cause of action) is denied;
4. Defendant's motion for more definite statement is granted as to plaintiff's allegations supporting his fourth and fifth claims for relief; and
5. Plaintiff has twenty (20) calendar days from the date of this order to amend his complaint.

DATED:     12/18/06

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Michael Millen          MikeMillen@aol.com

**Counsel for Defendant:**

Steven R. Blackburn     sblackburn@ebglaw.com
Matthew A. Goodin       mgoodin@ebglaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      12/18/06                                SPT
                                                **Chambers of Judge Whyte**